UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | |
|---|---|
| Send | |
| Enter | |
| Closed | |
| JS-5/JS-6 | |
| Scan Only | |

**CASE NO.:** CV 17-02627 SJO (Ex)  **DATE:** May 30, 2017

**TITLE:** Agredano v. Southwest Water Company et al.

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                 Not Present
Courtroom Clerk                                  Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**               **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                      Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO STATE COURT AND ATTORNEY'S FEES** [Docket No. 13]**; DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT; AND MOTION TO STRIKE** [Docket No. 11]

These matters are before the Court on (1) Plaintiff Luis Agredano's ("Plaintiff") Motion to Remand to State Court and Attorney's Fees ("Remand Motion"), filed May 8, 2017; and (2) Defendants Southwest Water Company ("SWWC") and Suburban Water Systems's ("Suburban") (together, "Defendants") Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement; and Motion to Strike ("Dismissal Motion"), filed April 13, 2017. Defendants opposed the Remand Motion ("Remand Opposition") on May 15, 2017, and Plaintiff replied ("Remand Reply") on May 22, 2017. Plaintiff opposed the Dismissal Motion ("Dismissal Opposition") on May 26, 2017. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for June 5 and June 19, 2017. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** the Remand Motion and **DENIES AS MOOT** the Dismissal Motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

    A.  Allegations in the Complaint and Procedural Posture

Plaintiff filed the instant putative class action against Defendants on January 26, 2017 in the Superior Court of the State of California for the County of Los Angeles. (*See* Notice of Removal, Ex. A ("Compl."), ECF No. 1-1.) The putative class, which Plaintiff believes to consist of "hundreds of individuals," is defined to include:

> All current and former non-exempt employees of [SWWC] and/or [Suburban] who work or have worked in California, in any of Defendants' construction department, and worked as utility workers, maintenance technicians, field workers or similar job title at any time from and after January 25, 2013.

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

CASE NO.: CV 17-02627 SJO (Ex)     DATE: May 30, 2017

(Compl. ¶¶ 51, 53.) Plaintiff also seeks to represent a subclass comprised of "[a]ll members of the [class above] who separated employment at any time from and after January 25, 2014." (Compl. ¶ 52.)

Plaintiff asserts the following six (6) causes of action against Defendants:

(1) failure to provide uninterrupted, thirty-minute long **meal periods** in violation of California Labor Code §§ 226.7 and 512, (Compl. ¶¶ 63-80);
(2) failure to provide ten-minute **rest periods** for every four hours worked in violation of California Labor Code § 226.7, (Compl. ¶¶ 81-90);
(3) failure to pay **minimum and regular wages** in violation of California Labor Code §§ 1194, 1194.2, 1197, and 1198 and the "Minimum Wages" section of the applicable IWC Wage Order by recording an unpaid thirty-minute long meal period regardless of whether the employee took such a meal period, (Compl. ¶¶ 91-104);
(4) failure to pay all **overtime wages** due to them in violation of California Labor Code §§ 510, 1194, and 1198 and the "Hours and Days of Work" section of the applicable IWC Wage Order, (Compl. ¶¶ 105-120);
(5) failure to **timely pay wages due upon separation** of employment in violation of California Labor Code §§ 201 through 203, (Compl. ¶¶ 121-128); and
(6) violation of California Business & Professions Code § 17200 *et seq.*, (Compl. ¶¶ 129-143).

In his Prayer for Relief, Plaintiff requests (1) general and special damages, including premium, regular, and overtime wages; (2) liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon pursuant to California Labor Code § 1194.2; (3) reasonable attorneys' fees and costs; (4) restitution; (5) a constructive trust; (6) declaratory judgment; and (7) pre- and post-judgment interest. (Compl. at 23-24.)

Defendants removed to this Court on April 6, 2017, asserting this Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA") and that the requirements of 28 U.S.C. § 1446 had been met. (*See* Notice of Removal ¶ 1.) Defendants submit that their counsel received both a copy of the Complaint and a Notice of Acknowledgment of Receipt-Civil in the mail on February 28, 2017 and that their counsel executed and mailed these forms to Plaintiff's counsel on March 7, 2017. (Notice of Removal ¶¶ 3, 8, Ex. B.)

Included in the Notice of Removal are declarations from Kirk Michael ("Michael") and Jocelyn Padilla ("Padilla"). In his declaration, Michael avers he is the Chief Financial Officer and Treasurer of SWWC and further avers that SWWC is a Delaware corporation with its corporate headquarters in the State of Texas. (*See* Decl. Kirk Michael in Supp. Notice of Removal ("Michael Removal Decl.") ¶¶ 1-3.) Meanwhile, in her five-paragraph declaration, Padilla declares that she is the Regional Human Resources Manager of SWWC who "ha[s] access to the personnel files, employment history and time records of [Agredano] and SWWC and Surburban's employees."

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority ___<br>Send ___<br>Enter ___<br>Closed ___<br>JS-5/JS-6 ___<br>Scan Only ___ |
|---|---|---|

**CASE NO.: CV 17-02627 SJO (Ex)**           **DATE: May 30, 2017**

(Decl. Jocelyn Padilla in Supp. Notice of Removal ("Padilla Decl.") ¶¶ 1-2.) She further avers that "Defendants employed approximately 115 non-exempt, hourly-paid employees who have worked in California in any of Defendants' construction departments, and/or worked as utility workers, maintenance technicians, field workers, or similar job title (hereinafter 'non-exempt field employees') since January 26, 2013." (Padilla Decl. ¶ 2.) She avers that "[t]hrough [her] position, [she is] generally aware of the work schedules of the non-exempt field employees," and further declares that "[s]ince at least January 26, 2013, the non-exempt field employees have been scheduled for approximately 13,335 workweeks and have typically worked an average of five shifts per week." (Padilla Decl. ¶ 3.) Moreover, she "ha[s] reviewed compensation data for the non-exempt field employees for the period of January 26, 2013 through January 26, 2017" and "ha[s] **analyzed** this data and **estimate** [sic] a **historic average hourly rate** of approximately **$23.77 per hour** based upon the putative class members' actual rates of pay throughout the four year timeframe." (Padilla Decl. ¶ 4 [emphasis added].) Finally, she avers that "[s]ince January 26, 2014, approximately 25 non-exempt, field employees have been voluntarily or involuntarily terminated from employment with Defendants," and declares that "[t]he hourly pay rate of each of the 25 employees at the time of their terminations of employment, multiplied by 8 hours per day for 30 days, is $124,886." (Padilla Decl. ¶ 5.) Based upon these submissions, Defendants argued (1) that there is diversity between at least one class member and one defendant, SWWC; and (2) that the amount in controversy exceeds $5 million. (Notice of Removal ¶¶ 14-33.) The instant motions followed.

II.     DISCUSSION

In his Remand Motion, Plaintiff argues that Defendants have failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million. (*See* Remand Mot., ECF No. 13.) In their Dismissal Motion, Defendants argue both that Plaintiff lacks standing to assert his fifth cause of action for waiting time penalties under California Labor Code section 203 and has failed to plausibly state such a claim. (*See* Dismissal Mot., ECF No. 11.) Before addressing the merits of these arguments, the Court sets forth the relevant legal standards.

       A.     Legal Standards

             1.     Remand Based on Lack of Subject-Matter Jurisdiction

28 U.S.C. section 1447(c) provides: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Under the removal statute, an action is removable to federal court only if it might have been brought there originally. *See* 28 U.S.C. § 1441(a). Courts can properly exercise diversity jurisdiction over class actions, provided "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs," and provided "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: CV **17-02627 SJO (Ex)**          DATE: **May 30, 2017**

  a. <u>CAFA's $5 Million Amount-In-Controversy Requirement</u>

Because "CAFA's primary objective" is to "ensur[e] '[f]ederal court consideration of interstate cases of national importance,'" *Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (citation omitted), there is "no antiremoval presumption [that] attends cases invoking CAFA," *Dart Cherokee Basin Operating Co., LLC v. Owens*, — U.S. —, 135 S. Ct. 547, 554 (2014). As a result, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee*, — U.S. —, 135 S. Ct. at 554. "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

In the wake of *Dart Cherokee*, the Court of Appeals for the Ninth Circuit has held that under CAFA, "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Ibarra v. Manhein Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("[I]n cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez*, 102 F.3d at 404 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1198. Indeed, where a defendant's damages assessment requires a chain of reasoning that includes assumptions, such assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199.

  b. <u>The "Local Controversy" Exception</u>

CAFA further provides that "[a] district shall decline to exercise jurisdiction" under CAFA in either of two situations, which are known as the "local controversy" and "home-state controversy" exceptions. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022-23 (9th Cir. 2007) (considering 28 U.S.C. § 1332(d)(4)). "The 'local controversy' exception provides that a 'district court **shall** decline to exercise jurisdiction' over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy." *Id.* at 1022 (emphasis in original). In particular, the statute provides that "[a] district court shall decline to exercise jurisdiction under [§ 1332(d)(2)]"

  (A)(i) over a class action in which-
    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV <u>17-02627 SJO (Ex)</u>                **DATE:** <u>May 30, 2017</u>

      (II)    at least 1 defendant is a defendant-
           (aa)    **from whom significant relief is sought** by members of the plaintiff class;
           (bb)    whose alleged **conduct forms a significant basis for the claims** asserted by the proposed plaintiff class; and
           (cc)    who is a **citizen of the State in which the action was originally filed**; and
      (III)   **principal injuries** resulting from the alleged conduct or any related conduct of each defendant were **incurred in the State in which the action was originally filed**; and
   (ii)   during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

§ 1332(d)(4)(A) (emphasis added). "The purpose of the local controversy exception is 'to respond to concerns that class actions with a truly local focus should not be moved to federal court under [CAFA] because state courts have a strong interest in adjudicating such disputes. At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole.'" *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 928 (9th Cir. 2015) (quoting S. Rep. No. 109-14, at 39 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 37). "[T]he burden of proof for establishing the applicability of an exception to CAFA jurisdiction rests on the party seeking remand, which in this case, as in most cases, is the plaintiff." *Id.* (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013)).

    B.    <u>Analysis</u>

        1.    <u>Remand Motion</u>

In his Remand Motion, Plaintiff argues the instant action must be remanded to the superior court for the State of California because (1) Defendants have failed to show by a preponderance of admissible evidence that CAFA's $5 million amount-in-controversy is satisfied; and (2) this action falls within the "local controversy exception." (*See generally* Remand Mot..) Defendants respond to these arguments. (*See generally* Remand Opp'n, ECF No. 14.)

           a.    <u>Defendants Have Failed to Demonstrate the Amount in Controversy Exceeds $5,000,000</u>

In their Notice of Removal and Opposition, Defendants rely on both the allegations in Plaintiff's Complaint and the Padilla Declaration to support their contention that the amount in controversy exceeds $5 million. In her declaration, Padilla offers information regarding (1) the number of Defendants' employees in positions that meet the putative class and subclass definitions; (2) the

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
|---|---|---|---|

CASE NO.:  CV <u>17-02627 SJO (Ex)</u>            DATE: <u>May 30, 2017</u>

approximate number of "workweeks" scheduled since January 26, 2013; (3) the average number of shifts scheduled per week; and (4) the historic average hourly rate paid to putative class members between January 26, 2013 and January 26, 2017 based on "compensation data." (*See* Padilla Decl. ¶¶ 2-5.) Plaintiff submits that the Padilla Declaration "**does not** include crucial information for the determination of the amount in controversy, including the average number of hours worked by the class, number of shifts over sixth hours a day and over eight hours a day, the number of shifts over twelve hours a day, and the average number of hours worked off the clock," and therefore argues that Defendants have not met their burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million. (Mot. 3.) The Court agrees.

"[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, — U.S. —, 135 S. Ct. at 554. "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* "When discussing the amount in controversy, a removing party cannot speculate, but must provide the underlying facts supporting its calculations." *Lockhart v. Columbia Sportswear Co.*, No. 5:15-cv-02634-ODW, 2016 WL 2743481, at *3 (C.D. Cal. May 11, 2016) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). "Where the defendant relies on calculations to satisfy its burden of proof, those calculations must be 'good faith, reliable estimates based on pleadings and other evidence of record.'" *Id.* (quoting *Ellis v. Pac. Bell Tel. Co.*, No. SACV 10-01141-CJC-FF, 2011 WL 499390, at *2 (C.D. Cal. Feb. 10, 2011)).

Where, as here, the complaint does not specify a particular amount in controversy, a defendant meets its burden of demonstrating that removal is proper where it "provide[s] evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$5 million]." *Sanchez*, 102 F.3d at 404. "Upon a motion to remand, both parties may (though it is unclear whether the plaintiff must) submit summary-judgment-style evidence." *Amaya v. Consol. Container Co., LP*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909, at *1 (C.D. Cal. July 28, 2015) (citing *Ibarra*, 775 F.3d at 1199-1200). "Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Id.* (quoting *Ibarra*, 775 F.3d at 1199). "Therefore, a defendant cannot assume a 100% violation rate based on the plaintiff's general allegation of a 'pattern and practice' and 'institutionalized unwritten policy that mandates these unlawful practices.'" *Id.* (quoting *Ibarra*, 775 F.3d at 1198-99 & n.3). "But a defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." *Id.* (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015)).

Courts in this district have noted the tension between *Dart Cherokee* and *Ibarra*, explaining that "[o]n the one hand, these cases require a defendant to do more than pull an assumed rate of

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

**CASE NO.:** CV 17-02627 SJO (Ex)    **DATE:** May 30, 2017

violation from the ether of generalized allegations of illegal behavior," but "[o]n the other hand, defendants should not be required to fall on their swords to establish the propriety of removal jurisdiction." *Id.* at *2 (citations omitted). "While post-*Ibarra* cases are not perfectly consistent, courts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) and where the plaintiff offers no evidence rebutting this violation rate." *Id.* at *2 (citing *Unutoa v. Interstate Hotels and Resorts, Inc.*, No. 2:14-cv-9809-SVW-PJW, 2015 WL 898512, at *2-*3; *Ibarra*, 775 F.3d at 1199). The Court must therefore analyze the amount in controversy on a claim-by-claim basis.

i.    <u>Meal- and Rest-Break Claims</u>

Defendant claims Plaintiff has put $3,169,729.50 in controversy in alleging meal and rest period violations. (*See* Notice of Removal ¶¶ 24-25; Remand Opp'n 8-9.) In order to reach this figure, Defendants assume that each putative class member suffered one meal period and one rest period violation five days per week during the relevant time period. (Notice of Removal ¶¶ 24-25; Remand Opp'n 8-9.) In other words, Defendants assume a "100% violation rate," meaning that employees were deprived of at least one rest period and one meal period every day they worked. (Remand Opp'n 8.) Plaintiff challenges Defendants' 100% violation rate assumption, arguing that his "complaint contains no information as to the number of times Plaintiff, or any other Class member, clocked out for a meal period and continue working." (Remand Mot. 8.)

The Court finds it reasonable to assume a 100% violation rate of the meal period provisions based on the allegations in Plaintiff's Complaint, but does not find it reasonable to assume such a rate with respect to rest periods. Plaintiff alleges Defendants engaged in a "pattern and practice of **never** compensating [Plaintiff or the putative class members] for [the additional one hour of] pay at [their] his regular rate of] pay" for each work period during which a meal or rest period was not properly provided. (Compl. ¶¶ 78, 88 [emphasis in original].) Plaintiff further alleges that Defendants "routinely" and "consistently" failed to provide him and the putative class members with the required 30-minute lunch break periods. (Compl. ¶¶ 68-70.) Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that "Plaintiff's own complaint alleges universal violations of meal . . . period laws" such that Defendants' "use of a 100% violation rate is proper." *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *5-*6 (C.D. Cal. Apr. 28, 2015).

Plaintiff's Complaint is significantly more vague with respect to rest periods. Nowhere in paragraphs 81 through 90 of the Complaint do terms such as "routinely," "consistently," "always," or any synonyms thereof appear. (*See* Compl. ¶¶ 81-90.) Such allegations likewise cannot be found in the "General Allegations" section of the Complaint. (*See* Compl. ¶¶ 22-48.) Instead, Plaintiff alleges Defendants failed "to pay an additional hour of pay an additional hour of pay **for**

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  CV 17-02627 SJO (Ex)              DATE: May 30, 2017

**each day a rest period was not provided** . . ." (Compl. ¶ 89 [emphasis added].) The Complaint therefore provides no basis for Defendant's asserted 100% violation rate, and Defendants thus bear the burden of providing evidence of the frequency of the alleged violations. *Ibarra*, 775 F.3d at 1199 (remanding so that both parties could provide evidence of violation rates and noting that the burden of proof fell on the removing defendant). Defendants provide no evidence whatsoever regarding how often putative class members were denied legally required rest periods, and the Court therefore declines to adopt Defendant's unsupported assumption that putative class members had five rest periods per week denied to them.

In sum, although the Court agrees with Defendants that Plaintiff has placed **$1,584,864.75** in controversy with respect to Plaintiff's meal period claim, it finds no support for Defendants' contention that Plaintiff has placed the same **$1,584,864.75** in controversy with respect to Plaintiff's rest period claim.

### ii.     Overtime and Minimum Wages

The Court next considers the sufficiency of Defendants' calculations regarding the amounts placed in controversy by Plaintiff's overtime and minimum wage claims. Plaintiff alleges that Defendants did not count the time he and the putative class members spent during non-compliant meal periods as time worked and did not include this time in the calculation of "hours worked." (Compl. ¶¶ 98, 116.) Based on Plaintiff's allegation that he and other putative class members "worked ten or more hours during the workday, and, were therefore entitled to receive a second meal period," (Compl. ¶ 33), Defendants assume that Plaintiff has placed in controversy one hour of wages for off-the-clock work per shift at California's applicable minimum wage per day and five hours of unpaid overtime per week, (*see* Notice of Removal ¶¶ 26, 28).

These assumptions are not warranted based on the allegations in Plaintiff's Complaint. Although Plaintiff alleges in paragraph 33 that he and others "worked ten or more hours during the workday," it is unreasonable to assume based on the other allegations recited in the Complaint the Plaintiff and other putative class members worked ten or more hours per day each and every weekday. Indeed, such a reading would be in direct contradiction of paragraph 24, in which Plaintiff alleges that he "typically worked five days a week, eight to thirteen hours a day," and paragraph 73, in which Plaintiff alleges that he and others "worked ten or more hours during the workday **on several occasions**." (Compl. ¶¶ 24, 73.)

Because Plaintiff has not alleged that he and other putative class members were entitled both to one hour of additional minimum wage payments and to one hour of overtime pay each and every day, Defendants were required to provide evidence of the frequency and extent of the alleged minimum wage and overtime violations. *See Ibarra*, 775 F.3d at 1199 (remanding so that both parties could provide evidence of violation rates and noting that the burden of proof fell on the removing defendant). Indeed, "Defendants are in the best position to adduce evidence regarding

| | | |
|---|---|---|
| JS-6 | **UNITED STATES DISTRICT COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA**<br><br>**CIVIL MINUTES - GENERAL** | Priority ____<br>Send ____<br>Enter ____<br>Closed ____<br>JS-5/JS-6 ____<br>Scan Only ____ |

**CASE NO.:** CV <u>17-02627 SJO (Ex)</u>   **DATE:** <u>May 30, 2017</u>

the working hours and wages" of their own employees. *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127 (C.D. Cal. 2010) (remanding wage-and-hour class action where defendants "failed proffer evidence supporting their calculations regarding the amount in controversy"); *see also Ornelas v. Children's Place Retail Stores, Inc.*, No. LA CV13-02226 JAK (MRWx), 2013 WL 2468388, at *4 (C.D. Cal. June 5, 2013) (remanding wage-and-hour class action where "Defendant could have obtained additional information regarding its current and former employees, i.e., the average period of employment, the average length of a shift, and the average number of wage statements," but failed to do so). But Defendants, through Padilla or otherwise, fail to provide any evidence regarding the number of hours putative class members **actually worked per day** or the amount of time putative class members actually worked off the clock. Indeed, Defendants make no effort to catalog the average number of hours Defendant and the putative class members worked per day, much less submit admissible statistical evidence demonstrating that putative class members might be entitled to an hour of unpaid minimum wage and overtime pay per day. Moreover, Defendants offer no evidence demonstrating that its employees actually worked the total number of hours they were "scheduled" to work. (*Cf.* Padilla Decl. ¶ 3.)

The thirty minute figure that can plausibly be inferred based on the allegations in Plaintiff's Complaint is less than one hour figure relied on by Defendants, and the difference in the resulting amount in controversy calculations is not insignificant. Relying on their hour-per-day calculation, Defendants arrive at an amount in controversy for Plaintiff's third cause of action in excess of **$625,078.13** and an amount in controversy for Plaintiff's fourth cause of action in excess of **$2,377,297.13**. Had Defendants instead based their calculations on the appropriate thirty minute figure (or provided any competent evidence indicating the putative class members might be entitled to more than thirty minutes of unpaid overtime), these sums would instead be **$312,539.07** and **$1,188,648.56**. The Court considers these latter sums as reasonable estimates of the amount in controversy vis-a-vis Plaintiff's third and fourth causes of action.

iii. <u>Section 17200 Claim</u>

Plaintiff does not directly challenge Defendants' calculation of the amount in controversy vis-a-vis his claim for waiting time penalties. (*See generally* Mot.) The Court thus accepts Defendants' estimate of an amount in controversy of **$124,886** based on this claim. (Notice of Removal ¶ 30.)

iv. <u>Attorneys' Fees</u>

In their Notice of Removal, Defendants argue that they are entitled to include the anticipated amount of reasonable attorneys' fees spent to litigate this action in their calculation of the amount in controversy. (*See* Notice of Removal ¶ 30.) While it is true that "courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue

| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only | |
|---|---|---|---|

**CASE NO.:** CV 17-02627 SJO (Ex)            **DATE:** May 30, 2017

over the life of the case," *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM (JCGx), 2012 WL 2373372, at *19 (C.D. Cal. June 22, 2012), this Court is persuaded that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal," *Davis v. Staples, Inc.*, No. CV 13-8937 FMO (PLAx), 2014 WL 29117, at *3 (C.D. Cal. Jan. 3, 2014) (quoting *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, at *2 (D. Ariz. Jan.6, 2010)). Indeed, the majority of courts in this District appear to be in accord. *See Chen v. United Talent Agency, LLC*, No. CV 17-1848 PA (EX), 2017 WL 946642, at *3 (C.D. Cal. Mar. 10, 2017); *Kidner v. P.F. Chang's China Bistro, Inc.*, No. EDCV 15-287 JGB (KKx), 2015 WL 2453523, at (C.D. Cal. Mar. 21, 2015); *Gomez v. CarMax Auto Superstores Cal., LLC*, No. 2:14-cv-09019-CAS-PLA, 2015 WL 1967078, at *2 (C.D. Cal. Apr. 30, 2015). Defendants have not provided evidence regarding either their anticipated overall fees, much less the amount of attorneys' fees incurred prior to filing their Notice of Removal, and the Court therefore does not consider reasonable attorneys' fees in its calculation of the amount in controversy.

### v. Conclusion

After reviewing the allegations in Plaintiff's Complaint, the minimal evidence submitted by Defendants, and the relevant authorities, the Court concludes that Defendants have failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million. At most, Defendants have demonstrated that Plaintiffs have placed **$3,210,094** in controversy ($1,584,864.75 for the meal break claim, $312,539.07 for the minimum wage claim, $1,188,648.56 for the overtime claim, and $124,886 for the Section 17200 claim). The Court therefore **GRANTS** Plaintiff's Motion to Remand. Because the Court remands the instant action based on Defendants' failure to meet their burden of demonstrating the amount in controversy exceeds $5 million, it need not consider Plaintiff's argument concerning the "local controversy exception." In a similar vein, the Court need not consider the propriety of Defendants' Motion to Dismiss, and **DENIES** this motion **AS MOOT**. *See Lopez v. JPMorgan Chase Bank, N.A.*, No. No. SACV 15-02030 JVS (JCGx), 2016 WL 320105 (C.D. Cal. Jan. 25, 2016) (denying as moot defendant's motion to dismiss where the court granted the plaintiff's motion for remand based on lack of subject-matter jurisdiction).

## III. RULING

For the foregoing reasons, the Court **GRANTS** Plaintiffs Mary Ruth Hughes and Kevin Shenkman's Motion for Remand and **DENIES AS MOOT** Defendants AutoZone Parts, Inc., AutoZone Inc., and AutoZone.com Inc.'s Motion to Dismiss Plaintiffs' Fraud Claim and Strike Prayer for Punitive Damages. The instant action is hereby **REMANDED** to the Superior Court of the State of California for the County of Los Angeles.

IT IS SO ORDERED.